Good morning. May it please the Court. My name is Patrick Rosenquist, and I represent the appellant in this matter, Paul Cavanaugh. We bring this appeal on two fronts. The first one is a 403 issue. Prior to trial, a defendant made a motion in limine to prohibit certain evidence from being admitted into trial. Namely, it was a testimony from the victim, in this case, a suicide attempt that transpired after the incident occurred with the defendant, and prior to A.L. going to the hospital to have a sexual assault examination. And that suicide attempt occurred within hours of the alleged assault? Is that accurate? I would say maybe within an hour or so, Your Honor. Why wouldn't that be close enough in time to be a matter that would provide context and would provide important background information to the assault itself? I would say from a context perspective, Your Honor, the suicide attempt may have provided context as to, I should say, the sexual assault may have provided context to why the victim attempted suicide, but the victim attempting suicide didn't provide context to the suicide attempt itself. As I understood, you wanted to get in statements or you wanted to get in information about an argument between A.L. and H.L. Is that accurate? That would have explained or given an alternative reason for the suicide attempt other than the assault? Sorry, Your Honor. At trial, that was kind of the response to losing the pretrial motion. So the idea at trial was if we're going to let the alleged suicide attempt in, I wanted to provide or at least have the opportunity to provide the full context to the jury about what had transpired. Now, your argument wasn't a relevance argument, was it? No, Your Honor. It was not a relevance argument. It was a 403 argument. I conceded that it was, in fact, relevant as a means of conveyance to the hospital as to, yes, there was temporal proximity to the incident that had just occurred. It was that it was so inflammatory and prejudicial that in minimal probative value. What would make its prejudice unfair, which is the key? There are a lot of things that are prejudicial that are not necessarily unfair, but what would make, why would it have been or in this case, why was it unfair to have admitted the evidence of the subsequent behavior of the victim? Certainly, and I think it goes back to context, Your Honor. As I alluded to earlier, the suicide or the sexual assault incident may have provided context as to why A.L. attempted suicide, but A.L. attempting suicide did not provide any context to what had transpired earlier. Counsel, let me ask basically the same question, but a little bit differently. You rely on Fechner, which was photos and other child pornography evidence, but what you want here, your motion, the effect of your motion was to preclude the victim of the crime from explaining what happened before, during, and after, and do you have any case where 403, I mean this is not just a little bit relevant, this is totally relevant, this is not 404, this is part of the event. Do you have any case where 403 by itself has excluded an assault victim from testifying to what happened and what it did to her immediately after the fact? No, Your Honor, not with that close of temporal proximity, and I do refer to... It just seems to me that's an incredible uphill, I mean 403 is the exception to the general relevance principles, and it's not to be broadly construed, and to keep a sexual assault victim from testifying, that's all relevant, I mean her credibility is obviously critical, and so you are precluding the victim from explaining the event in such a way as to either enhance or detract from her credibility. I don't see how you can get there with the 403 case law. And Your Honor, that is something I certainly took into account when I was putting together this brief, which is what brought me to my second argument. If you're going to let that information, and if you're going to let the two people that engaged in the fight prior to the victim's suicide attempt to illustrate the context of what happened, you need to allow the full context to come in, which is what brought me to my second argument. I felt that after A.L. had testified, or we had, I think it was in the middle of testimony, we had broke for recess, and the United States had brought up the point that we are tap-dancing around a potential Rule 412 issue because some of the insults that the victim's mother had hurled at the victim prior to the suicide attempt were very poignant, very direct, and pretty salacious. The defendant was admonished during recess to not get up to that line again, which I felt at that time sort of prohibited the defendant from getting the full context of the fight that transpired between A.L. and her mother. Based on the cross-examination that you did conduct, what additional information did you want to get before the jury that you thought would have made a difference? I wanted to get the victim's mother to testify as to directly what was said between A.L. and herself. So, A.L. had the opportunity to kind of fully expound on what had transpired. I believe the admonishment from the court prohibited me from at least getting into that with the mother. What about your cross-examination of A.L.? Well, I did get what I wanted to say or what I wanted A.L. to testify in, but there may have been a difference in what was the context of the fight. So, the victim's mother may have had a very different story or may have had a very different thought on what had transpired. So, the victim's mother in this particular case, if they had a different story or . . . So, was it your goal to diminish the credibility of the victim? It was at least to highlight that somebody may not be credible here or at least, you know, compare and contrast the two stories as to what had transpired prior to the suicide attempt. Where should I go on the exchange about don't cross . . . don't get near that line? That occurred during the cross of A.L., right? It happened during a recess. Yeah, but she was still being cross-examined. Yes, I believe so. So, what in the record . . . did you make a record of what question you wanted to ask H.L. that you were concerned about the court thinking that would get close to the line? I mean, close to the line. A.L. is 412. H.L. is not. Where is the bench conference? Counsel, Your Honor, can I ask this? Your Honor, I thought it was, in the moment, made pretty clear to me what I was not allowed to get into. I felt that at that point, I was . . . that happened. But you've got to make your appellate record. It seems to me the potential cross of H.L. is very different from a 412 standpoint than an A.L. cross. And the judge said, I don't want . . . I'm watching whether you get close to that line. I'm inclined to think trial counsel has an obligation to preserve the record on appeal to have a sidebar and say, Judge, can I ask this? Well, Your Honor, I understand the heat of trial that it may have seemed . . . Or just tactics. Right. From your perspective, that might have been a failure on my part. I believe that it was pretty clear . . . made clear to me in that exchange with the trial court that I was not to get up to that line again. And the way I took that to mean that I'm not allowed to ask those pointed questions even of H.L. because that was some pretty inflammatory language that was being hurled back and forth. Well, I can understand . . . Trial counsel has to be leery with that record of asking a question in front of the jury and having opposing counsel say he just crossed the line and the trial court agrees. And that's not something that you want to have happen in front of the jury. But that doesn't preclude a sidebar about where's the line that you threatened me not to cross when it comes to cross-examining H.L. about what she said to A.L. And I certainly appreciate that, Your Honor. And in my mind, it seemed like there was a pretty clear line and I was not to get up to it. You're within your rebuttal. You can continue if you like or reserve. I will reserve, Your Honor. Thank you. Mr. Rodenbacher, as soon as the mic is prepared. MR. RODENBACHER, AS SOON AS THE MIC IS PREPARED APPEARING ON BEHALF OF THE UNITED STATES, WE'RE ASKING THIS COURT TO AFFIRM THIS MORNING BECAUSE THE DISTRICT COURT ACTED WELL WITHIN ITS BROAD DISCRETION IN ALLOWING H.L. AND A.L. TO TESTIFY ABOUT THE OVERDOSE THAT OCCURRED ON THE VERY HEELS OF THE SEXUAL ABUSE KAVANAUGH COMMITTED UPON HER AND BECAUSE THE DISTRICT COURT DID NOTHING IN NO WAY BARRED KAVANAUGH FROM COMPLETING, EXCUSE ME, FROM PRESENTING A COMPLETE DEFENSE. AND I'D LIKE TO START THIS MORNING ACTUALLY WITH THE SECOND ISSUE, WHICH IS THAT THE DISTRICT COURT DID NOTHING TO BAR KAVANAUGH FROM COMPLETING, FROM PRESENTING A COMPLETE DEFENSE. AND I THINK THE COURT MR. RODENBACHER, AS SOON AS THE MIC IS PREPARED APPEARING ON BEHALF OF THE UNITED STATES,    THE DIRECT CAUSAL LINK BETWEEN AN OVERDOSE AND A SEXUAL ASSAULT. THE SECOND WAY YOU CAN DISTINGUISH ZAFIR IS THAT THE DEFENSE IN ZAFIR SPECIFICALLY MADE AN OFFER OF PROOF, IN FACT, INDICATED IN PARTICULAR THAT IT WANTED TO GO INTO 412 EVIDENCE IN ORDER TO COUNTER THE GOVERNMENT'S EXPERT. IN THIS CASE, WE ACTUALLY HAVE NEITHER OF THOSE DECISIONS, RIGHT? THE UNITED STATES DID NOT PRESENT ANY EXPERT WITNESS. WE ONLY PRESENTED THE VICTIM AND HER MOTHER, DESCRIBING THE FACTUAL LAYOUT AND CONTEXT IN WHICH THE EVENTS HAD OCCURRED THAT MORNING. WE ALSO HAVE NO INSTANCE IN WHICH THE DEFENSE ATTEMPTS TO INTRODUCE ANY 412 EVIDENCE. IN FACT, YOUR HONOR, THE SIDEBAR THAT'S REFERENCED ABOUT PAGE 79 OR SO IN THE TRANSCRIPT, WHEN THE DISTRICT COURT AND THE COUNCIL HAVE THIS CONVERSATION ABOUT APPROACHING THE LINE, IF YOU WILL, THE DEFENSE SPECIFICALLY INDICATES THAT IT'S NOT GETTING INTO 412 EVIDENCE, HASN'T ASKED ANY 412 QUESTIONS. SO ZAFIR HAS TWO ELEMENTS THAT THIS CASE DOES NOT. AND THOSE TWO ELEMENTS IN ZAFIR ARE WHAT CAUSED THE COURT IN THAT CASE TO OVERTURN THE VERDICT. SO WE DON'T HAVE ZAFIR HERE AT ALL. WE DO HAVE A SEXUAL ABUSE CASE INVOLVING AN OVERDOSE, BUT WE DON'T HAVE THE SALIENT LEGAL ARGUMENTS AND THE POINTS OF DECISION THAT ZAFIR DID. ARE YOU SAYING THAT CROSS-EXAMINATION OF H.L. ABOUT THE FIGHT WOULD NOT IMPLICATE RULE 412? IT CERTAINLY COULD HAVE IMPLICATED IT. AND, OF COURSE, I THINK THE RECORD REFLECTS THAT CONCERN ABOUT CROSSING THE LINE WAS LEGITIMATE. I THINK IT WAS LEGITIMATE, BUT WE HAVE TO ASK WHAT RULING EXACTLY DID THE DISTRICT COURT MAKE THERE. AGAIN, IN THE CONTEXT, WE'RE IN THE EXAMINATION OF THE VICTIM HERSELF. IS THERE ANY CROSS OF H.L.? I GOT THE IMPRESSION FROM THE BRIEFS THERE WASN'T EVEN ANY. THERE WAS CROSS OF H.L. IN FACT, YOUR HONOR, ABOUT PAGE 179 OF THE TRANSCRIPT. THE COURT WILL FIND THAT COUNSEL ASKED H.L. IF THERE WAS A DISCUSSION BETWEEN HER AND A.L. THAT MORNING. AND AT THAT POINT, H.L. SAID SOMETHING TO THE EFFECT OF, YES, THAT'S WHY I HAD NOT WANTED HER TO GO DOWN THERE. AND I THINK THAT IF THE COURT LOOKS BACK AT THE MOTION IN LIMINEE AND THE ORDER IN LIMINEE, THE COURT MIGHT ACTUALLY CONSIDER THE POSSIBILITY THAT DEFENSE COUNSEL DIDN'T WANT TO GO FURTHER WITH H.L. THAN IT DID. AND THE REASON FOR THAT IS BECAUSE THERE HAD BEEN A PRE-TRIAL RULING ON THE ADMISSIBILITY OF H.L.'S OWN PRIOR INCIDENT OR INCIDENTS WITH THE DEFENDANT THAT MIGHT HAVE COME IN UNDER 413. AND SO, AGAIN, I THINK YOU'D HAVE TO MAKE AN INFERENCE FROM THAT RECORD, BUT THERE DEFINITELY IS A STRATEGIC CHOICE ON THE PART OF THE DEFENDANT AT THAT POINT IN TIME NOT TO PRY FURTHER FROM H.L. WHAT SHE WOULD HAVE MEANT BY THAT. IN ADDITION, ALSO ON PAGE 179, I THINK YOU'LL SEE THAT THERE WAS A LITTLE BIT OF AN ELEMENT OF SURPRISE IN THE RESPONSE THAT H.L. GAVE SPECIFICALLY TO THE QUESTION THAT SHE RESPONDED AND THEN SHE WENT TO THE DEFENDANT'S HOUSE. AND THAT WAS SORT OF, I THINK, UNEXPECTED, ALTHOUGH I THINK THE DISCOVERY REFLECTED THAT WOULD HAVE BEEN HER RESPONSE, BUT IT SEEMS UNEXPECTED IF YOU READ THROUGH THE TRANSCRIPT, BECAUSE THEN DEFENSE GOES ON TO SAY SOMETHING LIKE, EXCUSE ME, YOU WENT TO WHOSE HOUSE? AS THOUGH IT WERE A SURPRISE. AND OF COURSE, IT DOES KIND OF NOT MAKE SENSE THAT THE VICTIM'S MOTHER WOULD GO TO THE DEFENDANT'S HOUSE RIGHT AT THE POINT THAT THE VICTIM REPORTS THIS TO HER MOTHER. BUT AGAIN, THAT PLAYS INTO THE WHOLE CONTEXT AND IT EXPRESSES THE IDEA THAT THE DEFENSE MADE A PARTICULAR CHOICE IN THIS CASE NOT TO GO FURTHER WITH H.L. AND AGAIN, I THINK AT FOUNDATION ON THIS SECOND ISSUE, WE HAVE TO ASK, WHAT IS THE RULING? It's the court saying, you can't go further, and the court is saying that in the midst of the cross-examination of the victim, not the victim's mother. The defense only complains that it wasn't allowed to go further with the victim's mother. It doesn't, and still here today, doesn't offer the court any particular line of questions that it would have asked the victim's mother. So you can ask, what was the ruling? Did it even apply to H.L. in the first place? We think that it did not. And again, what was the ruling as you see it? The ruling as we see it was not to go further in the cross-examination of A.L. And it's important to recognize where we were at the cross-examination. The defendant had just asked the victim pointed leading questions. Isn't it true that your mom called you a slut? Isn't it true that your mom called you a whore? Isn't it true that your mom said you sleep with men for meth? Those were the questions before this recess and before the United States brought this to the court's attention outside of the jury's presence. It's unclear after A.L. answered those questions, yes, what the defendant, even if those were the questions he wanted to ask the victim's mother, what answers would have been different? He's the one who put the mother's words in the victim's mouth to begin with by putting them in his question. And she answered affirmatively. He hasn't given this court, he hasn't given the court below, he hasn't given this court in his brief or in his argument any indication of what it was he was going to ask. Do you think a proffer is required in this context? I think a proffer is required. I think it would be a different situation, too, if there had at least been something in the brief. I think it would be an altogether different situation, or not an altogether one, but somewhat different situation, if he could stand here today and tell this court what it was he would have asked. But that, just because he could come up with something then, now, or later, doesn't mean that it would have made a material or favorable difference to this jury's verdict, which, again, was a split verdict. There were two counts and they acquitted on one and they convicted on the other. That's a pretty good indication, this court has said time and again, that the jury paid attention, wasn't inflamed in its passions, and it's a pretty good indication with respect to Issue 2 that this, any error, and we don't concede at all that there was a ruling or an error, mind you, but if there was, anything would have been a determination of A.L. If he wanted to ask the mother what she said to her own daughter, it would have been the same questions that A.L. answered in the affirmative, and it wouldn't have changed the perspective on her credibility at all. I, again, want to reiterate that the split verdict not only contributes to the harmlessness of any error on the second issue, but on the first as well. And unless Your Honors have any further questions, we ask you affirm, and I'll yield my time. I don't see any more questions. Thank you. Thank you, Mr. Rotenbacher. Mr. Rosenquist, one moment, allow the mic preparation. I'll get used to this. It's better than remote. Your Honor, I just wanted to touch briefly on something the United States just posited, and that was that the same questions asked of the victim's mother wouldn't have changed the jury's outlook on this perspective. Now, if the victim's mother had very different answers to those same pointed questions, is it flammatory as that language was, it's quite possible that the credibility of the victim in this matter would have been looked at through a different lens by the jury. The victim's mother in this particular case was sober. She was getting other people's kids ready for school that morning, namely two individuals that were at the party that had come home intoxicated, one who was intoxicated to the point of drinking. The victim had come home after a long night of drinking, and the testimony of the physician's assistant was that she was at a .15, so she was extraordinarily intoxicated, almost twice the legal limit. The only person that was not was the victim's mother in this matter. So she would have had a very clear perspective, at least in the chain of events, as to what exactly was said and what had transpired. And if that was different than what the victim had to say, I think that certainly goes to the credibility of the victim, Your Honor. Unless there is any more questions. Yes. Counsel, you do have just a little more time. What was the precise crime of conviction? It was sexual assault or sexual abuse of an incapacitated victim. And what was the acquitted offense? It was aggravated sexual abuse by force. Okay. What relevance would the questions you wanted to ask of the mother have had to do with the conviction for the actual offensive conviction? Well, because the facts you just cite would indicate that hours later, the victim's blood alcohol was nearly twice the legal limit. It seems factually quite consistent with the jury's conclusion that this is someone who would have been unable to really comprehend or defend themselves in a sexual context. What would additional questions of either of the subject witnesses here have made a difference to the offensive conviction? I think, Your Honor, if you're going to look at it in that context, it probably goes to the sobriety of the mother. We're coming off the heels of a victim that was purportedly incapacitated at the time of the incident offense. But what's the sobriety of, what's the relevance of the sobriety of the mother? Because she would have had probably a little bit of a clearer understanding of what that exchange was prior to the victim's suicide attempt and that the victim's credibility coming out of the fog of being intoxicated might not have had the clearest recollection of events. All right. Thank you, Your Honor. Thank you, Mr. Rosenquist. The Court notes that you've represented the appellant here under the Criminal Justice Act and the Court wishes to express to you our appreciation for doing so. Thank you.